**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1918
_____

SELWIN MARTIN,
                                        Appellant
v.

ADMINISTRATOR NEW JERSEY STATE PRISON;
ATTORNEY GENERAL NEW JERSEY

_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-15-cv-07158)
District Judge: Honorable Jerome B. Simandle


_____


Argued November 18, 2020

Before:  JORDAN, KRAUSE, and RESTREPO,
*Circuit Judges*

(Opinion Filed: January 21, 2022)

Benjamin R. Barnett
Micah Brown **[ARGUED]**
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
        *Counsel for Appellant*

Maura M. Sullivan **[ARGUED]**
Camden County Office of Prosecutor
200 Federal Street
Camden, NJ 08103
        *Counsel for the Appellees*

_____

OPINION OF THE COURT
_____


RESTREPO, *Circuit Judge*.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on state prisoners seeking federal habeas corpus relief. 28 U.S.C. § 2244(d)(1). The one-year clock begins to run, as relevant here, when a state prisoner exhausts all options on direct appeal thus rendering the state conviction "final." *Id.* § 2244(d)(1)(A). However, AEDPA also provides a tolling mechanism: under 28 U.S.C. § 2244(d)(2), the one-year clock pauses for "[t]he time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim is pending."

Appellant Selwin Martin's state conviction became "final" on April 10, 2002, triggering the limitations period. The clock ran for 193 consecutive days, until October 21, 2002, when Martin filed a petition for state post-conviction relief ("PCR"). The one-year clock was paused until June 14, 2004—the last day on which Martin could have appealed (but did not) the trial court's denial of his PCR petition—and expired 172 days later, on December 3, 2004. On June 12, 2015, almost eleven years following the lapse of the limitations period, Martin filed a petition seeking federal habeas relief.

Martin appeals the District Court's denial of his habeas petition as untimely. The crux of Martin's argument stems from his April 6, 2012 filing in state appellate court of a motion for leave to appeal "as within time" the trial court's denial of his PCR petition. Martin argues that the state appellate court's acceptance of his appeal "as within time" retroactively tolls the one-year limitations period (retroactive in the sense that the limitations period had expired more than seven years prior to the time Martin moved for leave to appeal "as within time" the trial court's PCR decision). In essence, Martin asks us to hold that a "properly filed" PCR petition is "pending" in accordance with § 2244(d)(2) for the period between (1) the expiration of time under state law in which a state prisoner could have timely appealed (but did not) a trial court's denial of a PCR petition, and (2) a state prisoner's submission of a motion for leave to file a PCR appeal "as within time." We disagree. Section

3

2244(d)(2)'s tolling mechanism looks forward, not backward, and a state court's acceptance of an appeal "as within time" does not rewind AEDPA's one-year clock.

Because Martin is not entitled to statutory or equitable tolling of § 2244(d)(1)'s limitations period, we hold that Martin's petition fails on the grounds of timeliness. For the reasons discussed below, we will affirm the District Court's dismissal of Martin's habeas petition.

## I.

### A.

In October 1999, following a jury trial in the Superior Court of New Jersey, Camden County, Martin was convicted of multiple crimes including murder, felony murder, and first-degree kidnapping. Martin received a sentence of, *inter alia*, life imprisonment subject to thirty-five years of parole ineligibility, to run consecutively to an unrelated federal sentence. On September 21, 2001, the Superior Court of New Jersey, Appellate Division affirmed Martin's conviction, and the New Jersey Supreme Court denied Martin's petition for certification on January 10, 2002. The 90-day period in which Martin could have sought certiorari from the United States Supreme Court, but did not, expired on April 10, 2002.

4

## B.

On October 21, 2002, Martin filed a timely petition for post-conviction relief. The trial court denied Martin's PCR petition on April 30, 2004. Pursuant to N.J. Ct. R. 2:4-1(a), Martin had 45 days—*i.e.*, until June 14, 2004—to appeal the trial court's denial of his PCR petition. That 45-day period lapsed without Martin filing an appeal.

Nearly eight years later, on April 6, 2012, Martin filed a *pro se* motion to appeal "as within time" the trial court's April 30, 2004 denial of his PCR petition. J.A. 83. The Appellate Division granted Martin's request on June 27, 2012, without providing the grounds upon which it based that decision. On December 18, 2014, the Appellate Division affirmed the trial court's denial of Martin's PCR petition, and the New Jersey Supreme Court denied Martin's petition for certification on April 30, 2015.

## C.

On June 12, 2015, Martin filed a petition for writ of habeas corpus pursuant to § 2254 in the District of New Jersey. The District Court ordered Martin to show cause as to why his petition should not be dismissed on timeliness grounds.

In response, Martin—still acting *pro se*—filed a declaration, dated December 4, 2015, in which he denied responsibility for the nearly eight-year delay in appealing the trial court's denial of his PCR petition. J.A. 81-84. According to

Martin, his counsel at the time of the trial court's denial of the PCR petition assured him immediately following the court's decision that an appeal would be filed. Beginning in January 2005, Martin claims that he attempted multiple times to ascertain the status of his PCR appeal, to include contacting his then-counsel and the Office of the Public Defender.[1] *See* J.A. 190

---

[1] In his declaration, Martin refers to "attached letters" as evidence of the frequency with which he wrote his then-counsel inquiring as to the status of his appeal. J.A. 83. However, no letters were attached to his declaration, nor to any filing in support of his habeas petition. The District Court acknowledged this discrepancy and assumed, for the purposes of deciding the State's motion to dismiss, that Martin's "description of the letters" was "accurate." J.A. 10 n.4. Relatedly, it concluded that no evidentiary hearing was necessary because "after even accepting the alleged contents of the letters as true, [Martin] did not act with reasonable diligence." J.A. 10 n.4.

"In preparing to respond to Martin's appeal in this Court, the State came across letters attached to Martin's April 6, 2012 state court motion to file as within time and related filings." Appellee's Br. 6 n.5. In addition to the letters, the State acknowledged that the entirety of Martin's April 6, 2012 filing, except for his notice of appeal, *see* J.A. 126, was not included in the District Court's record. The parties included the missing documents in their joint appendix. *See* J.A. 185-212. These documents provide additional facts pertaining to

6

the delay that were not included in Martin's December 2015 declaration; for example, Martin alleges that he wrote a letter, dated March 8, 2012, to the trial court judge requesting a copy of the order denying his PCR petition. *See* J.A. 190, 196. Additionally, his April 6, 2012 filing does not reference his seeking of assistance from a prison paralegal in December 2011. *See* J.A. 189-96. Martin does not challenge the District Court's determination that an evidentiary hearing was unwarranted, nor does he otherwise argue for remand based on the letters not being in the District Court's record. And neither party filed a motion for leave to supplement the record on appeal, nor do they ask that we take judicial notice of the missing filings.

Although "[t]his Court has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record," we may allow for an expansion of the record under certain circumstances. *In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 96-97 (3d Cir. 1990); *see also* 2 Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 37.1 (7th ed.). However, we need not decide whether such an exception exists here, as we take judicial notice of the entirety of the state court record. *See U.S. ex rel. Geisler v. Walters*, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (taking judicial notice of briefs and petitions filed in state court that had been missing at the time of the district court's decision so that the Court may review "a full and proper record," as the district court "could

7

(Martin alleging that "all [his] efforts" to contact his then-counsel as to the status of his appeal were "fruitless," despite his then-counsel having made him a "solemn promise" "[a]t the conclusion of [his] hearing" to file an appeal). Martin alleges that he made "[n]umerous . . . unanswered" calls to this then-counsel and wrote him "every six months" inquiring as to his appeal. J.A. 83. According to Martin, it was not until December 2011 (following his transfer from a federal facility in Virginia, where he had been serving an unrelated federal sentence, to a state prison in New Jersey) that he was made aware there was no pending PCR appeal. Explaining that he had no legal training, was without "personal letters, law books[,] and several legal files" that had gone missing during his transfer to New Jersey, and otherwise "didn't know what to do," Martin

have done" if the documents had been found sooner); *see also Swanger v. Zimmerman*, 750 F.2d 291, 297 (3d Cir. 1984) (taking judicial notice of state court documents that were provided to the Court on appeal).

This is not to say that we view the letters filed by Martin on April 6, 2012 as those that he intended to attach to his December 4, 2015 declaration—that inference is unsupported at best. As relevant to our review of the District Court's denial of Martin's petition on the grounds of timeliness, those letters remain missing. We also see no reason to deviate from the District Court's determination that an evidentiary hearing was unwarranted. *See Robinson v. Johnson*, 313 F.3d 128, 143 (3d Cir. 2002).

8

sought the assistance of a prison paralegal in filing a notice of appeal and a motion for leave to file "as within time"—both of which form the basis of his April 6, 2012 submission to the Appellate Division. J.A. 83.

Following Martin's response to the order to show cause, the State moved to dismiss the petition as untimely. Martin did not file a response. And on March 15, 2017, the District Court dismissed the petition with prejudice. In a sound and thoughtful opinion, the District Court concluded that Martin, although eligible for a period of statutory tolling, failed to adhere to § 2244(d)(1)'s one-year statute of limitations. The District Court reasoned that the one-year clock was tolled for certain periods during the pendency of his PCR petition, but the clock restarted—and never stopped—following the expiration of the 45-day period in which Martin could have, but did not, file an appeal of the trial court's denial of the PCR petition. Thus, according to the District Court, the one-year statute of limitations expired in December 2004. As to equitable tolling, the District Court found that Martin failed to demonstrate that he undertook reasonable diligence in pursuing an appeal of the trial court's denial of his PCR petition. Martin timely appeals.[2]

---

[2] The District Court declined to issue Martin a certificate of appealability. We granted him a certificate of appealability on the issue of "whether the District Court properly dismissed his petition as untimely," to include "whether and to what extent the state court's decision to permit the filing of the appeal 'as

9

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254(a). We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We review *de novo* a district court's dismissal of a state prisoner's habeas petition on statute of limitations grounds. *See Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003). Where, as here, the district court did not hold an evidentiary hearing, our review of the district court's refusal to equitably toll § 2244(d)(1)'s limitations period is likewise *de novo*. *See LaCava v. Kyler*, 398 F.3d 271, 275-76 (3d Cir. 2005).

## III.

Martin, as a state prisoner, is subject to a one-year limitations period for seeking federal habeas relief. *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody

---

within time' distinguishes this case from others addressing requests to appeal out of time." J.A. 16-17 (citations omitted).

We also appointed *pro bono* counsel for Martin pursuant to 28 U.S.C. § 1915(e)(1). We recognize Benjamin R. Barnett, Esq. and Micah Brown, Esq. of Dechert LLP—appointed counsel—for their commitment to *pro bono* service as well as their dedicated and high-quality representation of Martin in this appeal.

pursuant to the judgment of a State court."). Martin's one-year clock began running on April 10, 2002, the date on which his judgment became "final."[3] *See id.* § 2244(d)(1)(A) ("The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"). Therefore, Martin's habeas petition was due no later than April 9, 2003. Yet he did not seek habeas relief until June 12, 2015, over twelve years later. Absent tolling of the one-year limitations period, Martin's petition was untimely.

We must determine whether the District Court erred in finding that neither statutory nor equitable tolling saves Martin's petition from dismissal. First, we ask: does Martin's entitlement to tolling pursuant to § 2244(d)(2) remedy the untimeliness of his petition? Answering in the negative, we next ask: did Martin act with the requisite due diligence to entitle him to equitable tolling? Again, answering in the negative, we hold that the District Court did not err in finding that neither statutory nor equitable tolling applies to save Martin's otherwise untimely habeas petition. Based on the following analysis, we will affirm the District Court's order granting the State's motion to dismiss Martin's petition on the grounds of timeliness.

---

[3] The parties do not dispute that § 2244(d)(1)(A) governs the start of Martin's limitations period, and we see no reason to suggest that an alternative start date should apply. *See* 28 U.S.C. §§ 2244(d)(1)(B)-(D).

11

**A.**

We first look to the extent to which Martin is eligible for statutory tolling. AEDPA's tolling mechanism provides that "[t]he time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added); *see Merritt*, 326 F.3d at 162 ("[T]o fall within the AEDPA tolling provision, the petition for state post-conviction review must have been both pending and 'properly filed.'") (citing *Fahy v. Horn*, 240 F.3d 239, 243 (3d Cir. 2001)). It is undisputed that Martin's petition was "properly filed."[4] Rather, at issue is whether Martin's PCR petition was "pending" such that it tolled the one-year limitations period and thereby saved his otherwise untimely habeas petition. A PCR petition is "pending" in accordance with § 2244(d)(2) "as long as the ordinary state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process." *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002). A PCR petition "by definition" remains "pending" "until the application has achieved final resolution through the State's post-conviction procedures." *Id.* at 220.

---

[4] The District Court likewise recognized that Martin's petition was "properly filed" within the meaning of § 2244(d)(2). *See* J.A. 76. Because we conclude that the petition was not "pending," we need not consider whether it was "properly filed."

12

Keeping this standard in mind, we must look to three distinct time periods to determine the extent to which Martin is entitled to statutory tolling: (1) October 21, 2002 to April 30, 2004; (2) April 30, 2004 to June 14, 2004; and (3) June 14, 2004 to April 6, 2012. As detailed below, we hold that Martin is undoubtedly entitled to some tolling of the limitations period pursuant to § 2244(d)(2); however, the tolling that he is entitled to is insufficient to rectify the untimeliness of his petition.

**1.**

To begin, Martin's conviction became final pursuant to § 2244(d)(1)(A) on April 10, 2002, the last day that Martin could have sought certiorari from the United States Supreme Court. Martin's one-year clock began running on April 11, 2002 and did not pause until Martin filed his PCR petition on October 21, 2002—193 days later.[5] As of October 21, 2002, Martin had 172 days remaining on the clock.

---

[5] To determine the number of days remaining on Martin's one-year clock, we count beginning the first day following the date upon which the judgment became "final," *see* Fed. R. Civ. P. 6(a)(1), and treat his PCR petition as "pending" from the date of its filing, *see Windland v. Quarterman*, 578 F.3d 314, 315 (5th Cir. 2009) ("[A] state habeas petition is 'pending' for the purposes of tolling under § 2244(d)(2) on the day it is filed through (and including) the day it is decided."); *cf. United*

13

Martin's PCR petition began "pending" pursuant to § 2244(d)(2) on October 21, 2002. *See Saffold*, 536 U.S. at 219-20 (stating that a petition is "pending" under § 2244(d)(2) when it is "in continuance"). The parties do not dispute that Martin's PCR petition continued to be "pending" through April 30, 2004, when the trial court denied his PCR petition.

**2.**

Under New Jersey law, Martin had 45 days after the denial of his PCR petition to file an appeal. *See* N.J. Ct. R. 2:4-1(a). The parties do not dispute that Martin's PCR petition remained "pending" for 45 days following the trial court's decision on April 30, 2004, *i.e.*, until June 14, 2004. *See Swartz v. Meyers*, 204 F.3d 417, 421 (3d Cir. 2000) ("'[P]ending' includes the time for seeking discretionary review, whether or not discretionary review is sought.").

**3.**

Martin urges us to hold that his PCR petition was "pending" for the approximately eight-year period between June 14, 2004 (the last day on which he could have appealed, but did not, the trial court's denial of his PCR petition) and April 6,

---

*States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006) (explaining that the date of a motion's filing is excluded for the purposes of "calculating includable time" under the Speedy Trial Act) (quoting *United States v. Yunis*, 723 F.2d 795, 797 (11th Cir. 1984)).

14

2012 (the day on which Martin moved to file his PCR appeal "as within time"). But he misconstrues the meaning of "pending" under § 2244(d)(2).

In *Swartz*, we held that "the term 'pending' must include the time between a court's ruling and the *timely* filing of an appeal." 204 F.3d at 420, 424 (emphasis added). Shortly thereafter, the Supreme Court agreed with this interpretation of "pending," confirming that "pending" includes the period between a lower state court's adverse finding and a petitioner's filing of a *timely* notice of appeal. *Saffold*, 536 U.S. at 217. In 2006, the Supreme Court, in *Evans v. Chavis*, once again considered the meaning of "pending" under § 2244(d)(2). 546 U.S. 189 (2006). In doing so, the *Evans* Court reaffirmed its holding in *Saffold* that the one-year clock tolls for the period "between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is *timely under state law*." *Id.* at 191 (second emphasis added).

Martin capitalizes on "timely" as used in *Swartz*, *Saffold*, and *Evans* to argue that a belatedly filed appeal that is ultimately accepted "as within time" satisfies § 2244(d)(2)'s "pending" requirement because it is "timely." According to Martin, "an appeal is properly pending so long as it was timely filed." Appellant's Br. 22. Consistent with AEDPA's principles of comity, finality, and federalism, Martin maintains that resolving whether a petition is "timely" for the purposes of the "pending" analysis "depends on the state courts' determination

15

of that issue." *Id.* at 30; Reply Br. 2-3 ("[W]hether a state appellate petition is timely and properly filed—and therefore 'pending' for AEDPA purposes—is a determination to be made by the courts of that state, and *not* by a later federal habeas court.") (citing *Saffold*, 536 U.S. at 226). So, he urges us to accept the Appellate Division's designation of Martin's petition "as within time" as a "conclusive[] determin[ation] that the appeal in question was timely filed" for the purposes of the "pending" analysis. Appellant's Br. 23, 30; *see also id.* at 16 (arguing that a state appellate court's acceptance of an appeal "as within time" is a "clear indication that [the] request for appellate review was timely") (quoting *Evans*, 546 U.S. at 198). And because his petition was "timely" filed, he argues that it was "pending" for the nearly eight years between the last day on which he could have appealed, but did not, the trial court's denial of his PCR petition and the day on which he moved to file his PCR appeal "as within time."

Martin's reasoning gives Frankenstein-like characteristics to § 2244(d)(2)'s tolling mechanism that threatens to write § 2244(d)(1)'s limitations period out of AEDPA. At the outset, we agree with Martin that "timely" in the "pending" context, as used in *Swartz*, *Saffold*, and *Evans*, indeed refers to a state's determination of an appeal's timeliness. However, "timely" here is not synonymous with a state appellate court's acceptance of a belated appeal "as within time." Rather "timely" means an appeal filed in accordance with the state law delineating the period in which a petitioner may appeal following a lower court's adverse determination, before the appeal would

16

be considered belated. "Timely" does not encapsulate a belated appeal that was ultimately accepted through the application of a tolling mechanism or exception to the state law governing the period in which a petitioner may file an appeal.

For example, in *Evans*, the Supreme Court considered the "pending" requirement in the context of whether § 2244's limitations period was tolled during the time in which a petitioner in California could submit an "original petition." *Evans*, 546 U.S. at 192. California, as opposed to a state like New Jersey, has an "indeterminate" timeliness requirement that is based on a finding of reasonableness. *Id.* at 192-93; *see also Saffold*, 536 U.S. at 222 ("Other States . . . specify precise time limits, such as 30 or 45 days, within which an appeal must be taken, while California applies a general 'reasonableness' standard."). The "timely" in *Evans* asks whether the petitioner filed his "original petition" within a "reasonable" time; its inquiry does not extend to whether an exception, if any, to California's "reasonableness" requirement would turn an otherwise unreasonable (and therefore untimely) petition suddenly reasonable, and thereby resuscitate its "pending" status. *Evans*, 546 U.S. at 201.

An examination of *Saffold and Swartz* leads us to the same conclusion. In *Saffold*, the Supreme Court focused on whether a petition was "pending" during the period in which a petitioner may appeal under California's "reasonableness" standard. *Saffold*, 536 U.S. at 219-21. It specifically recognized that "pending" applies "as long as the *ordinary* state col-

17

lateral review process is 'in continuance.'" *Id.* at 219-20 (emphasis added); *see also Evans*, 546 U.S. at 192, 199-200 ("[I]n *Saffold*, we held that timely filings in California (as elsewhere) fell within the federal tolling provision on the assumption that California law in this respect did not differ significantly from the laws of other States, *i.e.,* that California's 'reasonable time' standard would not lead to filing delays substantially longer than those in States with determinate timeliness rules," which are "typically just a few days.") (emphasis omitted). Likewise in *Swartz*, our examination focused on whether a petition was "pending" during the period "between one appellate court's ruling and the deadline for filing a timely request for allowance of appeal when a timely request for allowance of appeal is not filed." *Swartz*, 204 F.3d at 420. There, "timely request" refers to the determinate period under Pennsylvania state law in which Swartz could have, but did not, file a "timely" appeal. *See, e.g.*, *id.* at 419 ("Swartz did not file a *timely* petition for allowance of appeal in the Pennsylvania Supreme Court. But, on March 4, 1997, Swartz filed a 'Motion for Permission to File Petition for Allowance of Appeal *Nunc Pro Tunc*.' On May 2, 1997, the Pennsylvania Supreme Court denied his motion.") (emphasis added).

So, it remains whether we are to accept Martin's invitation to expand the scope of "timely" beyond its meaning in *Swartz*, *Saffold*, and *Evans* and hold that a "properly filed" petition is "pending" for the period between the expiration of time in which a petitioner could have appealed, but did not, the trial court's denial of a PCR petition and the day on which the state

appellate court grants his petition to appeal "as within time." We join our sister Courts of Appeals in declining to do so.

In *Fernandez v. Sternes*, the Seventh Circuit addressed essentially an identical question to that on appeal here: "what is the period 'during which' a petition was pending, when it became 'properly filed' because the state court excused a delay?" 227 F.3d 977, 978 (7th Cir. 2000). The petitioner in *Fernandez*, much like Martin, failed to file his appeal in accordance with Illinois's rules concerning the timeliness of an appeal and instead, nearly a year after that deadline expired, filed a motion to file a late petition for leave to appeal, which the state court granted. *Id.* at 979. The *Fernandez* Court took a common-sense approach, holding that "State processes ended when the time to seek further review expired. They may be revived, but the prospect of revival does not make a case 'pending' in the interim." *Id.* at 980-81. Accordingly, it is "a make-believe approach . . . [to view] petitions . . . [as *continuously* pending whenever a state court allows an untimely filing." *Id.* at 981. "[P]refer[ing] reality," the Court held that "[a]n untimely petition is just that; it is filed when it is filed, and it was not 'pending' long before its filing.'" *Id.*

We too prefer "reality." Section 2244(d)(2)'s "pending" requirement looks forward, not backward. This sensible construction of the statute comports with the fact that, at the expiration of time in which to file a timely PCR appeal, a petitioner's PCR proceedings have concluded. In other words, from the expiration of time in which to file a timely appeal and the state court's acceptance of the belated appeal, there is no

PCR petition for the state court system to consider. Nor is there a petition that could be appealed. The state review process is done; it is not dormant, it is not latent, and it is not hibernating in case a petitioner should choose at some point down the road to request a state appellate court to review a belated appeal. This amounts to the exhaustion of a petitioner's state court remedies, and thereby does not step on the toes of AEDPA's principles of comity, finality, and federalism. *See Saffold*, 536 U.S. at 220 ("A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief. . . . The exhaustion requirement serves AEDPA's goal of promoting comity, finality, and federalism, by giving state courts the first opportunity to review [the] claim, and to correct any constitutional violation in the first instance. And AEDPA's limitations period—with its accompanying tolling provision—ensures the achievement of this goal because it promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments.") (internal citations and quotations omitted).

While it is true that a state court's acceptance of an untimely appeal breathes new life into the state PCR proceeding—and may *at that point* trigger § 2244(d)(2)'s tolling mechanism (a determination that we need not reach today)—it does not resuscitate the PCR petition for the period in which it was, for all practical purposes, defunct. Any other reading would essentially "sap the federal statute of limitations of much of its effect," *Fernandez*, 227 F.3d at 980, allowing a petitioner to sit on his federal rights while waiting an indeterminate time to file

a belated state appeal. This would give § 2244(d)(2)'s tolling mechanism a "Cheshire-cat like quality, both there and not there at the same time." *Id.*; *see also Streu v. Dormire*, 557 F.3d 960, 966-67 (8th Cir. 2009) (holding that a PCR petition was not "pending" between the expiration of time for an appeal and the filing of a motion for leave to file a belated appeal because there was nothing "in continuance" or "not yet decided" after the expiration of time in which the petitioner could have filed a notice of appeal, even in light of the fact that the state court later granted petitioner's motion for leave to file an untimely appeal); *Hoggro v. Boone*, 150 F.3d 1223, 1226 n.4 (10th Cir. 1998) (noting in *dicta* that "[§] 2244(d)(2) requires a court to subtract time only for the period when the petitioner's 'properly filed' post-conviction application is being pursued").[6]

---

[6] Martin attempts to distinguish *Fernandez*, *Streu*, and *Swartz* on the ground that none of these cases concern the acceptance of a belated appeal "as within time." *See* Appellant's Br. 12-15, 23-30. Rather they concern either a request to file a late petition, a request to file a notice of appeal out of time, or a *nunc pro tunc* motion. *See Streu*, 557 F.3d at 962; *Swartz*, 204 F.3d at 419; *Fernandez*, 227 F.3d at 979; *see also Hoggro*, 150 F.3d at 1226 n.4. The differences in nomenclature are cosmetic and make no difference in our analysis. And, as relevant to Martin's case, the New Jersey Supreme Court has said that it prefers "as within time" as the "contemporary descriptive" of

\* \* \* \* \*

We hold that Martin's petition was not "pending" for the nearly eight years between June 14, 2004 (the last day that he could have timely appealed, but did not, the trial court's denial of his PCR petition) and April 6, 2012 (the day on which Martin moved to file his PCR appeal "as within time").[7] Martin is ineligible for tolling under § 2244(d)(2) for the duration of this period. Therefore, the one-year limitations period for Martin to file his habeas petition expired on December 3, 2004, *i.e.,* 172 days following June 14, 2004.

---

"*nunc pro tunc*." *State v. Molina*, 902 A.2d 200, 203 n.1 (N.J. 2006).

[7] We need not make a determination as to Martin's entitlement to statutory tolling for the period beginning on April 6, 2012 (when he requested to appeal "as within time") and running through June 27, 2012 (when the Appellate Division accepted his appeal "as within time"). *But see Swartz*, 204 F.3d at 423 n.6 (agreeing with the Tenth Circuit in *Hoggro* that "the time during which [the petitioner's] *nunc pro tunc* request for allowance of appeal was pending does not toll the statute of limitation").

**B.**

Given that Martin's entitlement to statutory tolling does not rectify the timeliness deficiency of his habeas petition, we next turn to whether Martin is entitled to equitable tolling.

Section 2244(d)(1)'s limitations period is subject to equitable tolling, *see Holland v. Florida*, 560 U.S. 631, 645-49 (2010); however, we are "sparing" in our use of the doctrine and do so "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice," *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)); *see also Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 89 (3d Cir. 2013) ("We extend the remedy of equitable tolling . . . when principles of equity would make the rigid application of a limitation period unfair[.]") (internal quotations and citations omitted). "The decision to equitably toll § 2244(d) 'must be made on a case-by-case basis.'" *Munchinski v. Wilson*, 694 F.3d 308, 329 (3d Cir. 2012) (quoting *Holland*, 560 U.S. at 649-50). Recognizing that "specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case," we do not rely on "bright lines" in deciding whether to exercise our equity powers. *Id.* (quoting *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)). Instead, our inquiry prioritizes "flexibility" over "mechanical rules." *Id.* (quoting *Pabon*, 654 F.3d at 399).

With that framework in mind, we generally apply a two-element test to determine whether a petition is entitled to equitable tolling of § 2244(d)(1)'s limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The petitioner bears the burden of establishing: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418); *accord Munchinski*, 694 F.3d at 329; *see also Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d Cir. 2012) ("This conjunctive standard requires showing *both* elements before we will permit tolling."). We begin, and end, our analysis of Martin's equitable tolling claim with an examination of the diligence prong. As detailed below, we hold that Martin has not demonstrated the requisite due diligence to entitle him to equitable tolling.

**1.**

To satisfy the diligence prong, a petitioner must demonstrate that he has been pursuing his rights with "reasonable diligence in the circumstances." *Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005) (quoting *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004)); *accord Holland*, 560 U.S. at 653. Determining whether a petitioner has exercised "reasonable diligence" is a "fact-specific" inquiry and, again, "depends on the circumstances faced by the particular petitioner." *Munchinski*, 694 F.3d at 331; *see also Wilson*, 426 F.3d at 661 ("The fact that we require a petitioner in one situation to undertake certain actions does not necessitate that we impose the same burden

24

on all petitioners" because "whether a habeas petitioner has exercised due diligence is context-specific."). A petitioner need not have acted with "maximum feasible diligence," *Munchinski*, 694 F.3d at 331 (quoting *Holland*, 560 U.S. at 653), but he also cannot have been "sleeping on his rights," *id.* (quoting *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010)). This "reasonable diligence" requirement applies not only to a petitioner's filing for federal habeas relief, but it also extends to the steps that the petitioner takes to exhaust available state court remedies. *See LaCava*, 398 F.3d at 277. Although we do not "expect Herculean efforts on the part of" a petitioner in exercising "reasonable diligence," a "lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799-800, 802 (3d Cir. 2013); *see Sch. Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981) ("[I]gnorance of the law is not enough to invoke equitable tolling."); *see also Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.") (internal quotations omitted).

**2.**

We agree with the District Court that Martin failed to establish that he has pursued his rights with "reasonable diligence." On April 30, 2004 (at the conclusion of the hearing during which the trial court denied his PCR petition), Martin's then-counsel made him a "solemn promise" that "he would file a Notice of Appeal on [his] behalf." J.A. 82, 190. Yet Martin did not inquire into the "status" of his appeal until January

25

2005, nearly nine months later (and nearly seven months following the lapse of the 45-day period under N.J. Ct. R. 2:4-1(a) in which Martin could have timely appealed the trial court's denial). *See* J.A. 82-83 ("In January 2005 I began attempts to contact [my then-counsel] and the Office of the Public Defender to ascertain the status of my appeal."). There is nothing in the record to suggest that Martin made any attempt over those nine months to confirm with his then-counsel, the Office of the Public Defender, the court, or any other entity that an appeal had been filed.

What constitutes "reasonable diligence" may differ when a petitioner's counsel promises that an appeal *will* be filed versus when a petitioner's counsel promises that an appeal *has* been filed. *Compare, e.g.*, *Schlueter*, 384 F.3d at 76 (noting that the petitioner, who failed to follow up on counsel's promise to file a PCR petition within a certain time period, "could have learned, as he did later, that [his counsel] had not filed a PCR petition. . . . [And] [i]f he had done so he still would have had a small window of time in which to file a *pro se* petition and save his [PCR] claims from dismissal as untimely"), *with Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 237-38, 242 (3d Cir. 1999) (concluding, in the context of an untimely filing of a Title VII case, that equitable tolling was warranted where "a diligent client persistently questioned the lawyer as to whether he had filed the complaint in time, and he affirmatively misrepresented to her that he had").

We proffer no bright line rule as to how long is too long to be considered "reasonable diligence" in following up on

whether a state PCR appeal was filed. However, in Martin's case, waiting nine months to first inquire as to the status of his appeal—after only having been "promise[d]," "at the conclusion of [his] hearing," J.A. 190, that an appeal would be filed and never having reached out to any source, his then-counsel or otherwise, during those nine months to confirm that an appeal in fact had been filed—suggests that he was "sleeping on his rights." *See Munchinski*, 694 F.3d at 331. Furthermore, although Martin's unanswered calls and bi-annual letters to his then-counsel as to the status of his appeal may suggest some consistency, that alone does not amount to a showing of "reasonable diligence" here, particularly given the substantial period of time between letters and that Martin had never received confirmation that an appeal in fact had been docketed.[8]

Finally, Martin learned in December 2011 that his appeal of the trial court's denial of his PCR petition was never

---

[8] Martin makes no showing as to how the missing "personal letters, law books[,] and several legal files," J.A. 83, prevented him from filing a habeas petition, nor why he could not have filed a petition prior to those materials going missing. *See, e.g.*, *Barton v. Pliler,* 65 F. App'x 108, 109-10 (9th Cir. 2003) (holding equitable tolling unwarranted when a petitioner who lost his personal legal files for approximately 13 months did not explain "why he had failed to file a petition *before* his materials were lost" or "how the materials at issue prevented him from filing a habeas petition without them").

submitted. Yet he waited approximately four months, until April 6, 2012, to file a motion with the Appellate Division for leave to appeal the denial "as within time." There is nothing in the record to explain why Martin waited nearly four months to submit his "as within time" motion, and certainly nothing suggesting that he exercised "reasonable diligence" during that period. In *Holland*, the Supreme Court concluded that a petitioner's actions were reasonably diligent when, in addition to writing his attorney "numerous" letters and "repeatedly" contacting the courts, its clerks, and the relevant bar association, he prepared his own habeas petition *on the same day* that he found out that his AEDPA clock had expired and mailed it the next day. 560 U.S. at 639, 653. A comparison to *Holland* is thus fruitless for Martin. After learning that his appeal was nearly eight years late, Martin's decision to wait approximately four months to file his "as within time" motion does not support a finding of reasonable diligence.[9]

---

[9] Martin urges us to hold that he is entitled to equitable tolling as a result of the Appellate Division's acceptance of his appeal "as within time." He bases this argument on the ground that the Appellate Division could have accepted his appeal "as within time" only if it had conducted an equitable tolling analysis. *See* Appellant's Br. 35 (citing *State v. Molina*, 902 A.2d 200 (N.J. 2006)). And applying the doctrine of comity, Martin suggests that we must defer to New Jersey's determination that he is entitled to equitable tolling. *See id.* at 37-38. We disagree. As an initial matter, and as Martin acknowledges, the

\* \* \* \* \*

Taking these circumstances together, we hold that Martin has failed to satisfy the diligence prong and is therefore not entitled to equitable tolling. This is not to say that the record fails to present a clear possibility of attorney abandonment. We simply need not reach the "extraordinary circumstance" prong of the analysis given Martin's failure to exercise the requisite diligence to entitle him to equitable tolling. *See Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255-56 (2016) ("[W]e have treated the two requirements as distinct elements in practice . . . rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other.").

## IV.

For these reasons, we will affirm the order of the District Court dismissing Martin's habeas petition as untimely.

---

Appellate Division did not give a reason for why it granted Martin's motion to appeal "as within time." Second, whether the state court found Martin entitled to equitable tolling as to his state PCR appeal has no bearing on the equitable tolling analysis in the federal habeas context. *See Holland*, 560 U.S. at 650 ("Equitable tolling . . . asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that *does not implicate* a state court's interpretation of state law.") (second emphasis added).